# Exhibit A

**SETTLEMENT AGREEMENT**

This Settlement Agreement ("Agreement") is entered into between: (1) Plaintiffs Shawn Nee, Shane Quentin, Greggory Moore, and the National Photographers Rights Organization ("Plaintiffs"); and (2) Defendants County of Los Angeles and Los Angeles County Sheriff's Department (collectively the "County"), Sergeant Maurice Hill, Sergeant Salvador Becerra, Deputy Richard Gylfie, Deputy Roberto Bayes, Deputy D'Andre Lampkin, Deputy Lashon O'Bannon, Deputy Carlos L. Sanchez, Deputy Jason Cartagena, Deputy Michael A. Chacon, Deputy Marina Garcia, Deputy Ryck Burwell, Deputy Gustavo Carranza, Deputy Ernie King, Deputy Anthony Paez, and Deputy Jose Carbajal, Jr. (collectively "Defendants").

**<u>Background</u>**

Plaintiffs and Defendants (collectively "the Parties") enter into this Agreement with reference to the following facts:

A. On about October 27, 2011, Plaintiffs filed the complaint in this action in United States District Court for the Central District of California (Case No. CV 11-08899 DDP (JCGx)) (the "Action"). Plaintiffs twice amended the complaint, filing a Second Amended Complaint in this action on or about September 21, 2012.

B. In the Second Amended Complaint, Plaintiffs alleged that in eleven separate incidents, deputies from the Los Angeles County Sheriff's Department ("LASD") either prevented them or others from taking photographs in a public place, without legal justification to do so, or searched or seized Plaintiffs or others without legal basis because they were taking photographs in a public place (the "Incidents").

C. The Second Amended complaint asserts claims against the Defendants under the federal and state law for unlawful search and seizure and for violation of rights to free expression.

D. The Parties desire to enter into this Agreement to resolve fully and formally all differences, and to discharge and dismiss all disputes between them, including all claims that might have been or may be the subject of the Claim for Damages or the Second Amended Complaint or may have arisen from the Incidents, upon the terms and conditions set forth herein.

**Agreement**

In consideration of the promises set forth in this Agreement and to resolve the claims in this Action, the Parties agree as follows:

1. Issuance of LASD Newsletter on Photography by Members of the Public. The County of Los Angeles agrees that the LASD will issue a newsletter governing photography by members of the public (the "Photography Newsletter"). The content of the Photography Newsletter is set forth at Attachment A. The Photography Newsletter shall be issued no later than 90 days from the Effective Date of this Agreement and shall be distributed to all employees of the LASD within 7 days of being issued through LASD's normal electronic distribution process. Under existing LASD policies, the Photography Newsletter will remain valid until revoked. While it is valid, the Photography Newsletter will be available to LASD employees on the LASD's intranet, and LASD deputies will be subject to testing on the content of the Photography Newsletter for promotional exams.

2. Training on Newsletter. LASD agrees to implement the following training on the contents of the Photography Newsletter:

a. Within 60 days of issuance of the Photography Newsletter, the LASD will provide training on the Photography Newsletter during the watch briefings offered at LASD's patrol stations or units providing patrol services. These trainings during watch briefings must be given to all stations and shifts, in a manner reasonably calculated to provide training to all deputies who provide patrol services.

b. Within 90 days of issuance of the Photography Newsletter, the LASD will incorporate the content of the Photography Newsletter into the LASD's Academy Training & and the LASD's Patrol School.

c. Upon issuance, the Photography Newsletter will be placed into LASD's recurrent briefing topics.

3. For three years from the Effective Date, LASD shall, prior to making any modifications to the Photography Newsletter, meet and confer with the ACLU of Southern California (the "ACLU") regarding any proposed changes. Should the ACLU and the County be unable to agree to the substance of changes, the ACLU and the County may go to the Court for mediation of disagreement of any proposed modifications.

4. The parties agree that the pending dispute over the confidentiality of the Internal Affairs Bureau ("IAB") investigations of Sgt. Salvador Becerra and Deputy D'Andre Lampkin shall end with the settlement of this case, and that the IAB report and all other personnel records that are currently the subject of the Defendants' July 19, 2013 Motion for Reconsideration, Dkt. No. 121, , and any testimony discussing the contents of the IAB report or those personnel records, shall remain confidential under the August 20, 2012 protective order, and be subject to terms of that Protective Order governing treatment of confidential materials.

The parties further agree there are documents that were identified as Confidential and subject to the Protective Orders executed in this matter that are the subject of current discussions to release certain documents from the protections afforded by the Protective Orders. The parties agree that any documents tentatively selected for confidential de-designation are being de-designated pursuant to this settlement and will not be made available to the public until this Settlement Agreement is approved by both the County of Los Angeles' Claim Board and Board of Supervisors.

5. Payment. In consideration of the Release and Discharge set forth below in Paragraph 5 and subject to the terms and conditions stated in this Agreement, the County agrees to pay Plaintiffs the amount of $50,000 in damages for physical injury and emotional distress and $340,000 in attorneys' fees and costs, for a total Payment of $390,000. Plaintiffs agree that the Payment is to be distributed as follows: One check in the amount of payable to: ACLU of Southern California Client Trust Fund. The Parties agree that this Payment will compensate for all alleged personal injuries, attorney's fees, costs, and all other damages and claims.

6. Release and Discharge. In consideration of the actions that the County has agreed to take and the payment called for in this Agreement, Plaintiffs waive all claims for declaratory and injunctive relief, damages, costs, and attorney's fees against the Defendants, their agents, employees, or employers that: 1) were or could have been pled in the Second Amended Complaint in this Action; or 2) otherwise arise from the Incidents; or 3) arise out of Defendants allegedly preventing Plaintiffs' from taking photographs in a public place; or 4) arise out of Defendants allegedly searching or seizing Plaintiffs without a legal basis because they were taking photographs. This Release and Discharge, on the part of Plaintiffs, shall be a fully binding and complete settlement between Plaintiffs and the Defendants, their assigns and

successors. Moreover, nothing contained herein is intended to prevent any Party from enforcing the Agreement.

7. Settlement Contingent Upon the Approval of the Los Angeles County Claims Board and Los Angeles County Board of Supervisors. The Parties acknowledge that this settlement is subject to the approval of the Los Angeles County Claims Board and the Los Angeles County Board of Supervisors. The Parties agree that the payment specified in Paragraph 4 above will be made no later than thirty (30) days from the date that the Los Angeles County Board of Supervisors approves the settlement.

8. Denial of Liability. This Agreement is entered into in compromise of disputed claims. The Defendants deny any violation of any federal, state, or local law related to their involvement in the Incident. The Defendants expressly deny any liability to any of the Plaintiffs. This Agreement constitutes the settlement of what the Defendants contend are disputed claims and nothing contained herein is to be construed as an admission of liability on the part of the Defendants.

9. Order of Dismissal. Upon receipt by Plaintiffs' counsel of the monies specified in Paragraph 4 above, Plaintiffs authorize and direct Plaintiffs' counsel to file a notice of dismissal with prejudice of the claims against the Defendants in this Action.

10. Effective Date. The effective date of this Agreement shall be the date upon which the Los Angeles County Board of Supervisors approves the settlement.

11. Waiver of Unknown Claims. Each of the Plaintiffs knowingly and voluntarily waives any and all rights and benefits otherwise conferred by the provisions of California Civil Code section 1542, which provides as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which, if known to him or her, must have materially affected his or her settlement with the debtor."

Plaintiffs expressly acknowledge that this Settlement Agreement and Release is intended to include in its effect, without limitation, all claims which Plaintiffs did not know or suspect to exist at the time of the execution of this Agreement and Release arising out of or in connection with his/her injuries and claims, as set forth above, and that this Settlement Agreement and Release contemplates the extinguishment of any and all such claim(s).

12. Enforcement. The Parties shall endeavor in good faith to resolve informally any differences regarding interpretations of and compliance with this Agreement prior to bringing such matters to the Court for resolution. If, however, there is any disagreement arising out of or relating to this Agreement that cannot be resolved between the Parties, the Parties agree that the Court, or with the Court's permission Magistrate Judge Jay C. Gandhi, shall retain jurisdiction over the underlying settlement and this Agreement for a period of three years from the date the Court enters an order approving the underlying settlement for the limited purpose of assisting the Parties in resolving any differences relating to the interpretation of this Agreement.

13. Successors. The Agreement shall bind the successors, assigns, heirs and personal representatives of each of the Parties.

14. Whole Agreement. This Agreement constitutes the entire agreement among the Parties and supersedes all prior agreements, written or oral, between Plaintiffs and the Defendants. In the event any provision or term of this Agreement is determined to be or is

rendered invalid or unenforceable, all other provisions and terms of this Agreement shall remain unaffected to the extent permitted by law.

15. Counterparts. This Agreement may be executed in counterparts, all of which together shall comprise a single agreement.

Dated: 2/12/14 — S Nee
Shawn Nee
*Individually, and for the National Photographers Rights Organization*

Dated: ______________ — ______________
Shane Quentin

Dated: ______________ — ______________
Greggory Moore

Dated: ______________ — ______________
[Authorized Representative]
County of Los Angeles

rendered invalid or unenforceable, all other provisions and terms of this Agreement shall remain unaffected to the extent permitted by law.

15. Counterparts. This Agreement may be executed in counterparts, all of which together shall comprise a single agreement.

Dated:______________________

______________________
Shawn Nee
*Individually, and for the National Photographers Rights Organization*

Dated: 1/15/14

______________________
Shane Quentin

Dated:______________________

______________________
Greggory Moore

Dated:______________________

______________________
[Authorized Representative]
County of Los Angeles

rendered invalid or unenforceable, all other provisions and terms of this Agreement shall remain unaffected to the extent permitted by law.

15. Counterparts. This Agreement may be executed in counterparts, all of which together shall comprise a single agreement.

Dated:________________________

________________________________
Shawn Nee
*Individually, and for the National Photographers Rights Organization*

Dated:________________________

________________________________
Shane Quentin

Dated: Jan. 20, 2014

________________________________
Greggory Moore

Dated:________________________

________________________________
[Authorized Representative]
County of Los Angeles

**APPROVED AS TO FORM:**

Dated: Feb. 28, 2014

Peter Bibring
ACLU of Southern California
*Counsel for Plaintiffs*

Dated: Mar. 10, 2014

Los Angeles County Counsel
*Counsel for Defendants*

# Attachment A

Members of the public, including the press, have a First Amendment right to observe, take photographs and record video in any public place where they are lawfully present.

Photography and the recording of video are common activities and are neither crimes nor indications of criminal activity, in themselves. Neither photography nor the recording of video, standing alone, can form the basis for a detention, arrest, or warrantless search.

Members of the public have the same right to take photographs and record video as members of the media (except for narrow circumstances authorizing media access to areas closed to the public pursuant to Penal Code § 409.5 due to the existence of a menace to public health or safety created by a calamity including a flood, storm, fire, earthquake, explosion, accident, or other disaster).

Members of the public have the right to take photographs and record video of peace officers engaged in the public discharge of their duties, including in such activities as detentions, searches and arrests, so long as the members of the public are in a place they have a legal right to be present. Officers should assume they are being recorded at all times when on duty.

The types of places an individual has a right to be present include public streets and sidewalks, an individual's home or business, common areas of public and private facilities and buildings, and any other public or private facility at which the individual is lawfully present.

Interference with Taking Photographs or Recording Video

Department members are prohibited from interfering, threatening, intimidating, blocking or otherwise discouraging a member of the public, who is not violating any other law, from taking photographs or recording video (including photographs or video of police activities) in any place the member of the public is lawfully present. Such prohibited interference includes:

1. Ordering a person to cease taking photographs or recording video;
2. Demanding that person's identification;
3. Demanding that the person state a reason why he or she is taking photographs or recording video;
4. Detaining that person;
5. Intentionally blocking or obstructing cameras or recording devices (not including physical barricades or screens used as a part of a tactical operation or crime scene).

Nothing in this policy bars officers from taking appropriate action if a person taking photographs or recording video is violating any provision of law; for example,

1. Engaging in actions that jeopardize the safety of the person, the officer or others.
2. Violating the law.
3. Interfering with or obstructing police actions through direct physical intervention.

Verbal criticism, insults, or name calling, or obscene gestures, directed at officers or others do not in themselves justify an officer taking corrective or enforcement action toward a member of the public, including one engaged in photography or video recording.

Nothing in this policy bars officers from initiating a consensual encounter with a person taking photographs or recording video. However, a person's refusal to answer questions or to speak with officers during a consensual encounter does not provide a basis for detention or search.

If a citizen's conduct related to the use of cameras or other recording devices rises to the level of necessitating an arrest for interfering or obstructing a peace officer's duties in violation of Penal Code sections 148, subdivision (a) or 69, deputies must adhere to Field Ops. Directive 12-01.

Department members are prohibited from deleting or destroying any photographic, audio or video recording under any circumstances. An officer may not require an individual to show the photographs that he or she has taken without a warrant. Procedures for involuntary and voluntary seizing of video and/or pictures are located in the Manual of Policy and Procedures, Section 5-04/110.12, Seizure of Photographic Evidence.